STATE OF NORTH CAROLINA v. HENRY HARMON MACK

No. COA07-135

(Filed 5 February 2008)

1. **Criminal Law— no mistrial ex mero motu—identification of defendant**

There was no abuse of discretion in the denial of a mistrial ex mero motu in a prosecution for cocaine offenses where one of the State's witnesses could not identify defendant as the person from whom he had tried to purchase crack. Another witness, an officer, testified that defendant's clothes matched that of an individual whom he saw engaging in a drug transaction.

2. **Appeal and Error— preservation of issues—ground of objection not specified**

To preserve a question for appellate review, a party must state the specific grounds for the desired ruling if they are not apparent from the context. Defendant could not assert that the trial court abused its discretion by not sanctioning the State for an alleged discovery violation where defendant objected to the introduction of the evidence, but did not state grounds for his objection and did not draw the trial court's attention to the alleged discovery violation.

3. **Criminal Law— information revealed day of trial—outcome of trial not affected**

The disclosure of a police report the State intended to introduce on the day of trial did not materially affect the trial and the assignment of error was overruled. The focus should be on the import of the undisclosed evidence at trial rather than on defendant's ability to prepare for trial.

4. **Evidence— subsequent acts—drugs sales—sufficiently similar**

The trial court did not err in a cocaine prosecution by admitting evidence concerning the subsequent acts of defendant. There was substantial evidence from which a reasonable jury could find

that defendant had committed a similar act; the fact that defendant played a different role in the two transactions (which involved intermediaries) was not sufficient by itself to classify the two transactions as dissimilar.

**5. Sentencing— stipulation to prior record level—sufficiency**

Defendant stipulated to his prior record level where the judge inquired about the correct level, suggesting level III; the prosecutor said that defendant would be a record level IV; and defense counsel said, "IV." Defendant contended that his counsel was repeating the prosecutor's assertion, but his counsel did not object or seek clarification.

**6. Sentencing— consolidated sentence—additional sentencing point**

The trial court erred by including an additional sentencing point on a conviction for selling cocaine in a prosecution which resulted in consolidated convictions for sale of cocaine and resisting an officer, and possession with intent to sell or deliver and delivery. The addition of a sentencing point in accord with N.C.G.S. § 15A-1340.14(b)(6) was appropriate for the conviction of delivering cocaine, but defendant had never been convicted of any offense containing all of the elements of selling cocaine.

**7. Drugs— cocaine sale with intermediary—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss for insufficient evidence charges. against defendant for possession of cocaine with intent to sell or deliver, delivery of cocaine, and sale of cocaine where there was evidence from which a reasonable jury might conclude that defendant possessed cocaine, intended to sell the cocaine, and then sold and delivered it to a witness. The dismissal of the additional charge of possession of cocaine does not demonstrate insufficient evidence.

Appeal by defendant from judgments entered 25 July 2006 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 12 September 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Gary R. Govert, for the State.*

*Crumpler Freedman Parker & Witt, by Vincent F. Rabil, for defendant appellant.*

STATE v. MACK

[188 N.C. App. 365 (2008)]

McCULLOUGH, Judge.

Defendant appeals judgments entered after a jury verdict of guilty of possession with intent to sell or deliver cocaine, selling cocaine, delivering cocaine, and resisting a public officer.

## FACTS

The State's evidence at trial tended to show the following: On 13 December 2004, Officer C. N. Kiser of the Winston-Salem Police Department was performing surveillance of 328 West 23rd Street, located near the intersection of 23rd Street and Pittsburgh Avenue in Winston-Salem, North Carolina. From his location, Officer Kiser had a clear line of sight from which he could see both the front and east sides of the house. During the course of his surveillance, Officer Kiser observed defendant walking back and forth between the porch and the sidewalk as vehicles approached the curb in front of the house. After approaching these vehicles, defendant would interact with some of the drivers. The first vehicle defendant approached was a red compact car. Once defendant reached the vehicle, Officer Kiser observed defendant lean into the car with his hand open as the driver of the car removed something with his thumb and forefinger. The driver then handed defendant money.

Officer Kiser observed a similar exchange involving defendant and a woman in a white truck. This woman exited her truck, talked with defendant, and then handed defendant money in exchange for an item small enough to be contained within defendant's thumb and forefinger. During a third exchange, a small white truck approached the front of the house in the same manner as the previous two vehicles. Defendant then approached the passenger side of the vehicle and entered the truck. After defendant entered the vehicle, the truck drove east on 23rd Street and made a left turn onto Collins Street. Officer Kiser subsequently contacted Officer McCready, who was able to follow the white truck in an unmarked vehicle. Officer Kiser observed defendant walking back to the property at 328 West 23rd Street several minutes later.

After defendant returned to the house, a four-door white car drove up and parked in front of the house. Defendant approached the vehicle, reached into his right jacket pocket, and leaned into the passenger side of the vehicle with his hand open. During this exchange, a second vehicle pulled up behind the first. A woman subsequently exited the second vehicle, walked over to defendant,

and waited behind him. When defendant finished his interaction with the first vehicle, defendant turned and exchanged small items with the woman from the second vehicle. Officer Kiser testified that one of the items appeared to be U.S. currency. Defendant then removed a baggie containing a white substance from his right front jacket pocket, and shook it. Following this exchange, a dark-colored compact truck approached the residence. Defendant opened the passenger door of the truck and sat inside the truck for a short period of time.

While defendant was sitting inside the dark-colored truck, Officer Kiser notified his arrest team. Officer Kiser described defendant as wearing "[b]lue jeans, a gray sweatshirt with red writing on the front, and a black jacket known commonly as a bomber jacket or bomber-style jacket." As the arrest team approached, defendant ran inside the east side of the house at 328 West 23rd Street. The arrest team followed suit, but was forced to wait outside the house until someone opened the door on the east side of the house. Officer Kiser then followed these officers into the house.

Once inside the house, Officer Kiser found defendant and three other individuals in the living room of the house. Defendant was sitting behind a desk wearing a gray sweatshirt with red writing and sitting on the black jacket that Officer Kiser had seen him wearing earlier. Officer Kiser then arrested defendant and searched his jacket. Inside of the right jacket pocket he found small granules of a white substance. Officer Kiser also confiscated $160 from defendant.

Testimony was also provided by Willie Phillips, who purchased crack cocaine at the 300 block of West 23rd Street on 13 December 2004. According to Mr. Phillips, he stopped to pick up a passenger wearing a black jacket, purchased a piece of crack from the individual for $10, and drove around the block before letting the passenger out. When he was stopped by the police, Mr. Phillips threw the crack on the floor, where it was found by the police. Mr. Phillips also testified that he was unfamiliar with the individual who sold him the crack, and could not identify him.

Officer Kiser further testified that on 2 February 2005 he again performed surveillance of 328 West 23rd Street. While performing surveillance, Officer Kiser observed defendant look around, remove items from a clear plastic baggie containing a white substance, hand these items to an individual named Mickens, and place the bag into a trash can. Mr. Mickens then put the items he received in his sock.

STATE v. MACK

[188 N.C. App. 365 (2008)]

After giving the items to Mr. Mickens, defendant walked across the street from 328 West 23rd Street and sat on a porch. While defendant sat on the porch, Mr. Mickens flagged down cars and exchanged items with the passengers. According to Officer Kiser, Mr. Mickens' activity was consistent with a method of distributing narcotics known as "bump running." Once Officer Kiser observed this activity, defendant and Mr. Mickens were arrested. Officers subsequently found a package of "white rocks" in the garbage can, as well as similar white rocks in Mr. Mickens' sock.

Defendant was tried at the 24 July 2006 Criminal Session of Forsyth County Superior Court for five offenses stemming from his actions on 13 December 2004. At trial, the State presented testimony by Special Agent Lisa Edwards, a forensic chemist with the State Bureau of Investigation (SBI). Agent Edwards testified that she had examined the contents of the envelope marked State's exhibit 1 and identified the contents as consisting of one tenth of a gram of a Schedule Two controlled substance, cocaine base, commonly known as crack cocaine. At the close of the State's evidence, defendant's charge for possession of cocaine was dismissed. A jury then found defendant guilty of the four remaining charges. Defendant's convictions for sale of cocaine and resisting a public officer were consolidated for sentencing. Defendant also received a second consolidated sentence for his convictions of possession with intent to sell or deliver cocaine and delivery of cocaine. For these convictions, defendant was sentenced to consecutive prison terms of 20-24 and 11-14 months respectively.

On 28 July 2006, defendant appealed the judgment of the trial court and filed a motion for appropriate relief, challenging the determination that defendant possessed a record level of IV for sentencing purposes. On 31 July 2006, the trial court reviewed defendant's prior convictions during a hearing on the motion for appropriate relief, and concluded defendant was properly classified as possessing a prior record level of IV. The trial judge then denied defendant's motion for relief from the sentence imposed.

I.

[1] Defendant first argues the trial court erred by not declaring a mistrial, *ex mero motu*, when the State's witness, Willie Phillips, could not identify defendant as the person from whom Mr. Phillips tried to purchase crack cocaine on 13 December 2004. We disagree.

Rule 10(b)(1) of our Rules of Appellate Procedure provides:

In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. Any such question which was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted or which by rule or law was deemed preserved or taken without any such action, may be made the basis of an assignment of error in the record on appeal.

N.C. R. App. P. 10(b)(1) (2007). "Even though Rule 10(b)(1) is a general rule pertaining to the preservation of questions for appellate review, this Court has not applied the plain error rule to issues which fall within the realm of the trial court's discretion[.]" *State v. Steen*, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). We have previously held that the decision " 'to grant a motion for mistrial is within the sound discretion of the trial court and its ruling will not be disturbed on appeal unless it is so clearly erroneous as to amount to a manifest abuse of discretion.' " *State v. Sanders*, 347 N.C. 587, 595, 496 S.E.2d 568, 573 (1998) (citation omitted), *cert. denied*, 534 U.S. 862, 151 L. Ed. 2d 95 (2001). The trial court should declare a mistrial only when such serious improprieties exist as " ' "would make it impossible to attain a fair and impartial verdict under the law." ' " *Steen*, 352 N.C. at 279, 536 S.E.2d at 31 (citations omitted).

In the case *sub judice*, defendant did not move for a mistrial following the testimony of Mr. Phillips. Rather, defendant now argues that a mistrial should have been granted *ex mero motu* by the trial judge. According to defendant, the lack of such a ruling amounted to either reversible or plain error. As previously discussed, this Court has not applied the plain error rule to issues within the discretion of the trial court, so we will review the trial court's actions for an abuse of discretion. *See Steen*, 352 N.C. at 256, 536 S.E.2d at 18. Upon a review of the record, defendant has failed to produce sufficient evidence that such serious improprieties existed as would deprive defendant of his right to a fair and impartial verdict. On appeal, defendant's only claim is that neither Mr. Phillips nor Officer Kiser could clearly see the individual who dealt the cocaine seized in Mr.

Phillips' car. Thus, defendant argues, the State presented insufficient evidence that Mr. Mack was the perpetrator of the crime charged.

Despite defendant's contention, the record reveals that the State presented evidence sufficient to identify Mr. Mack as the perpetrator of the crime. At trial, the State presented testimony by Officer Kiser describing the individual he observed conducting drug transactions on 13 December 2004. According to Officer Kiser, this individual was wearing "[b]lue jeans, a gray sweatshirt with red writing on the front, and a black jacket known commonly as a bomber jacket or bomber-style jacket." Upon entering the house at 328 West 23rd Street to arrest this individual, Officer Kiser observed defendant wearing a gray sweatshirt with red writing and sitting on a black jacket, clothing identical to that worn by the individual selling drugs. In addition, the State presented evidence that defendant was involved in drug transactions, similar to the transactions on 13 December 2004 ("December transactions"), in February 2005. These February transactions, performed by defendant, were sufficiently similar to the December transactions as to provide evidence that defendant may have been involved in the December transactions as well. Our Supreme Court has held:

> The judge declares the law arising upon the evidence, and the jury should be governed by his instructions, but they are the sole triers of the facts, subject to the right of the [judge] to say what evidence is competent and relevant, and what it tends to prove. What it does prove is the peculiar question for the jury to decide.

*State v. Windley,* 178 N.C. 670, 674, 100 S.E. 116, 118 (1919). Therefore, we hold the trial judge did not err in failing to declare a mistrial when competent evidence was presented that tended to identify defendant as the perpetrator of the crime charged.

## II.

[2] Second, defendant argues the trial court erred by failing to grant a continuance or recess for defendant before allowing the admission of previously undisclosed evidence. Specifically, defendant objects to the introduction of evidence concerning defendant's actions subsequent to the initial drug charge. Defendant also objects to the introduction of an SBI lab report as well as the testimony of SBI Agent Lisa Edwards. We are unpersuaded by defendant's contentions.

N.C. Gen. Stat. § 15A-902(a) (2005) provides that a defendant may seek discovery from the State by submitting a written request for vol-

untary compliance. *See State v. Blankenship*, 178 N.C. App. 351, 353, 631 S.E.2d 208, 210 (2006). "[T]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate." *State v. Payne*, 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990), *cert. denied*, 498 U.S. 1092, 112 L. Ed. 2d 1062 (1991). Once the State provides the requested discovery, "the discovery is deemed to have been made under an order of the court[.]" N.C. Gen. Stat. § 15A-902(b); *see Blankenship*, 178 N.C. App. at 354, 631 S.E.2d at 210. In addition, once the State voluntarily provides discovery pursuant to § 15A-902(b), the discovery provided to defendant "shall be to the same extent as required by subsection (a) of [§ 15A-903.]" N.C. Gen. Stat. § 15A-903(b) (2005). N.C. Gen. Stat. § 15A-903(a) provides that upon a defense motion, the Court must order the State to

> **[g]ive notice to the defendant of any expert witnesses that the State reasonably expects to call as a witness at trial.** Each such witness shall prepare, and the State shall furnish to the defendant, a report of the results of any examinations or tests conducted by the expert. The State shall also furnish to the defendant the expert's curriculum vitae, the expert's opinion, and the underlying basis for that opinion. **The State shall give the notice and furnish the materials required by this subsection within a reasonable time prior to trial, as specified by the court.**

*Id.* (emphasis added). Once the State provides discovery, a continuing duty exists to disclose the existence of additional evidence. N.C. Gen. Stat. § 15A-907 (2005). Should the State fail to comply with a discovery order pursuant to § 15A-903, such a failure will not automatically require the exclusion of the undisclosed evidence. *State v. Quarg*, 334 N.C. 92, 103, 431 S.E.2d 1, 6 (1993). "The sanction for failure to make discovery when required is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion." *State v. Herring*, 322 N.C. 733, 747-48, 370 S.E.2d 363, 372 (1988). " 'A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision.' " *Quarg*, 334 N.C. at 103, 431 S.E.2d at 6 (citation omitted).

In the case at bar, defendant mailed a request for voluntary discovery to the State. In this request, defendant asked for, *inter alia*, any reports of physical or mental examinations, tests, measurements or experiments made in connection with this case, and the

names and addresses of all prospective expert witnesses for the State. Although defendant acknowledges the State's discovery materials included the State's investigative materials, defendant contends the State did not disclose all of the evidence outlined in defendant's request for discovery. This late notice, defendant argues, amounted to a violation of both N.C. Gen. Stat. § 15A-903(a)(2) and the United States Constitution.

## A.

Defendant initially contends that the State's introduction of evidence on the initial day of the trial violated N.C. Gen. Stat. § 15A-903(a)(2). Specifically, defendant objects to the introduction of (i) testimony by SBI Agent Lisa Edwards as an expert witness, (ii) results of a lab report produced by the SBI analyzing a substance collected following the December transactions, and (iii) evidence of defendant's involvement in the February transactions. According to defendant, this evidence should not have · been admitted because he did not receive notice of the State's intention to present the aforementioned evidence until the first day of trial. Thus, defendant argues, the case must be remanded for appropriate sanctions. We disagree.

A review of the record reveals that although defendant may have been given short notice as to the introduction of the contested evidence, defendant failed to preserve any error associated with such notice for appeal. *See* N.C. R. App. P. 10(b)(1). Our Supreme Court, in *Herring*, previously denied relief for violations of the discovery code where the defendant failed to object to these violations at trial. 322 N.C. at 748, 370 S.E.2d at 373. In *Herring*, the defendant argued the trial court should have sanctioned the State for failing to disclose the results of footprint comparisons to the defendant. *Id.* In overruling defendant's contention, the Supreme Court noted:

> When the State offered footprint comparison evidence, the defendant did not object or request sanctions against the State. The defendant may not now complain that the trial court abused its discretion in failing to sanction the State for this alleged discovery violation. Having failed to draw the trial court's attention to the alleged discovery violation, the defendant denied the court an opportunity to consider the matter and take appropriate steps.

*Id.* In the case *sub judice*, defendant claims he was first informed of the State's intention to introduce the contested evidence during a pre-

trial conference with the judge. However, defendant raised no objection to the introduction of (1) the SBI lab report or (2) the testimony of SBI Agent Lisa Edwards, either during the pretrial conference or during trial. Defendant's sole objection, with respect to the contested evidence, concerned the introduction of evidence with regard to defendant's involvement in drug transactions on 2 February 2005. In response to the State's declaration that it intended to introduce evidence of defendant's involvement in another drug transaction, defense counsel responded that she "would be objecting to that on multiple grounds." The North Carolina Rules of Appellate Procedure require that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b)(1). Here, although defense counsel objected to the introduction of the aforementioned evidence, she did not state any grounds for the objection. As it is unclear upon what grounds she objected, we hold defendant failed to draw the trial court's attention to the alleged discovery violation. *See Herring*, 322 N.C. at 748, 370 S.E.2d at 373. Thus, we hold the trial court was denied an opportunity to consider the discovery violations alleged by defendant. As such, defendant is barred from asserting the trial court abused its discretion for failing to sanction the State. *See Herring*, 322 N.C. at 748, 370 S.E.2d at 373.

B.

[3] Defendant further contends that the trial court committed constitutional error by allowing the introduction of the police report concerning defendant's involvement in the February transactions on the initial day of trial. According to defendant, the police report contained evidence that no lab report had been filed as to the substance seized from those involved in the February transactions. Defendant claims the lack of a lab report amounted to favorable evidence, and the State's failure to produce this evidence prior to trial amounted to the suppression of this evidence. We disagree.

" '[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt, or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *State v. Holadia*, 149 N.C. App. 248, 256, 561 S.E.2d 514, 520 (2002) (quoting *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218 (1963)), *cert. denied*, 355 N.C. 497,

562 S.E.2d 432 (2002). The duty to disclose such evidence applies irrespective of whether there has been a request by the accused and encompasses impeachment evidence as well as exculpatory evidence. *Id.* at 256, 561 S.E.2d at 520. "Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 257, 561 S.E.2d at 521 (quoting *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494 (1985)). " 'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *State v. Thompson*, 139 N.C. App. 299, 306, 533 S.E.2d 834, 840 (2000) (quoting *Bagley*, 473 U.S. at 682, 87 L. Ed. 2d at 494). When determining whether defendant's lack of access to specific evidence violated his due process rights, "the focus should be on the effect of the nondisclosure on the outcome of the trial, not on the impact of the undisclosed evidence on the defendant's ability to prepare for trial." *State v. Hunt*, 339 N.C. 622, 657, 457 S.E.2d 276, 296 (1995); *see State v. Lynn*, 157 N.C. App. 217, 220, 578 S.E.2d 628, 631 (2003).

In the case *sub judice*, the police report in question was made available to defendant at the start of trial. Defendant makes no contention that access to the report was prohibited or limited during trial, but simply asserts that the late introduction of this evidence amounted to suppression. Here, defendant's main assertion appears to be that he was denied material evidence during his preparation for trial, rather than during the trial itself. Upon review, we find defendant's argument unpersuasive. As the focus of the inquiry should be on the impact of the undisclosed evidence at trial, rather than on defendant's ability to prepare for trial, we hold that the introduction of evidence in this case did not amount to suppression. *Id.* The late disclosure of this evidence had no effect upon its availability at trial. The record contains no evidence, nor does defendant argue, that the late introduction of this evidence materially affected the outcome of the trial. Therefore, defendant's assignment of error is overruled.

### III.

[4] Third, defendant argues the trial court erred by admitting evidence concerning the subsequent acts of defendant. Specifically, defendant contends the evidence concerning defendant's involvement in drug transactions on 2 February 2005 should not have been admitted under Rule 404(b) of the North Carolina Rules of Evidence because this evidence was dissimilar to the current offense and unfairly prejudicial. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005) provides:

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

Rule 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990), *cert. denied*, 421 S.E.2d 360 (1992). Further, Rule 404(b) allows for the admission of both subsequent and prior acts of defendant. *State v. Hutchinson*, 139 N.C. App. 132, 136, 532 S.E.2d 569, 572 (2000).

When introducing evidence under Rule 404(b), our courts have recognized the need to " 'adequately safeguard against the improper introduction of character evidence against the accused.' " *State v. Carpenter*, 361 N.C. 382, 387, 646 S.E.2d 105, 109 (2007) (citation omitted). Thus, the admission of evidence under this rule is subject to several constraints. *Id.* at 388, 646 S.E.2d at 110. "Our Rules of Evidence require that in order for the prior crime to be admissible, it must be relevant to the currently alleged crime." *Id.*; N.C. Gen. Stat. § 8C-1, Rule 401 (2005). In addition, the general rule of inclusion articulated in *Coffey* is constrained by requirements of similarity and temporal proximity. *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002). For evidence of another crime to satisfy the similarity component, it must constitute " 'substantial evidence tending to support a reasonable finding by the jury that the defendant committed [a] *similar* act.' " *Al-Bayyinah*, 356 N.C. at 155, 567 S.E.2d at 123 (citation omitted).

In the instant case, defendant contends evidence of his involvement in the February transactions caused him to be unfairly prejudiced. According to defendant, the December transactions were not sufficiently similar to the February transactions to show either: (1) defendant was the person who committed the current crime or (2) the existence of a common scheme or plan. Thus, defendant argues, the trial court erred in allowing the introduction of such evidence for the aforementioned purposes and for instructing the jury:

**STATE v. MACK**

[188 N.C. App. 365 (2008)]

> Evidence has been received tending to show that two months after the events which are being tried, that the Defendant was in the same community . . . doing some acts similar as to what is being tried in this case.

> This evidence was received solely not to show that the Defendant, just because he did something after the offense that's being tried, that he is guilty of the offense that actually is being tried, but it will show—or introduced to show (sic) the identity of the person who committed the crime. You can consider it for that purpose or you may consider it for the purpose that there existed in the mind of the Defendant a plan, scheme, or system, design involving the crime charged in this case.

After reviewing defendant's contentions, we find them to be without merit.

In the case *sub judice*, the State presented evidence at trial which tended to show, *inter alia*, (1) defendant was present during the drug transactions that took place on 13 December 2004 and 2 February 2005, (2) both the December transactions and the February transactions occurred in the vicinity of 328 West 23rd Street, and (3) defendant was seen in the possession of a plastic baggie containing a "white substance" during both the December and February transactions. The main difference between the two transactions appears to have been defendant's role in the transactions themselves: in the December transactions defendant approached the cars himself, while in the February transactions he handed a "white substance" to a man named Mickens, who then approached the cars. According to Officer Kiser, this behavior, known as "bump running," is a method of distributing narcotics designed to lessen the chances of police apprehension. Given the similarities between the December transactions and the February transactions, the fact that defendant played a different role in the February transactions is insufficient, by itself, to classify the two transactions as dissimilar. Upon review, we hold the evidence of the February transactions represented substantial evidence from which a reasonable jury could find defendant had committed a similar act. *See Al-Bayyinah*, 356 N.C. at 155, 567 S.E.2d at 123. Therefore, defendant's contention that evidence of the February transactions should not have been admitted under Rule 404(b) is overruled.

IV.

**[5]** Fourth, defendant argues the trial court erred in sentencing defendant at a prior record level of IV. Specifically, defendant contends the State did not present sufficient evidence of defendant's prior record level. We disagree.

N.C. Gen. Stat. § 15A-1340.14(f) (2005) provides that a prior conviction may be proved by: (1) "[s]tipulation of the parties[,]" (2) "[a]n original or copy of the court record of the prior conviction[,]" (3) "[a] copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts[,]" or by (4) "[a]ny other method found by the court to be reliable." In proving the prior record level, "[t]he State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists and that the offender before the court is the same person as the offender named in the prior conviction." N.C. Gen. Stat. § 15A-1340.14. A statement by the State asserting that an offender has a certain number of points, corresponding to a specified record level, is not sufficient to meet the requirements of the catchall provision found in N.C. Gen. Stat. § 15A-1340.14, even if the statement is uncontested by the defendant. *State v. Riley*, 159 N.C. App. 546, 557, 583 S.E.2d 379, 387 (2003); *see* N.C. Gen. Stat. § 15A-1340.14(f)(4). However, defense counsel "need not affirmatively state what a defendant's prior record level is for a stipulation with respect to that defendant's prior record level to occur." *State v. Alexander*, 359 N.C. 824, 830, 616 S.E.2d 914, 918 (2005); *see State v. Albert*, 312 N.C. 567, 579-80, 324 S.E.2d 233, 241 (1985).

In the case at bar, the following exchange occurred during the sentencing hearing on 25 July 2006:

THE COURT: All right, the Defendant is a prior record Level III for sentencing?

[PROSECUTOR]: Your Honor, at this point he will be a record Level IV.

[DEFENSE COUNSEL]: IV.

THE COURT: And two class D's, one H, and of course, that misdemeanor of delaying.

[DEFENSE COUNSEL]: I believe one G and two H—

[PROSECUTOR]: Sale will be a G, and other two felonious (sic) should be an H.

Following this exchange, the trial judge then completed defendant's sentencing worksheet and determined defendant to be a record level IV possessing a total of nine sentencing points. In accordance with this determination, the trial judge sentenced defendant as a level IV. For each conviction, defendant was given a sentence within the presumptive range as provided by N.C. Gen. Stat. § 15A-1340.17 (2005).

On appeal, defendant contends that the State did not present sufficient evidence to prove defendant's prior record level. According to defendant, defense counsel's statement of "IV", in response to the prosecution's assertion that defendant possessed a prior record level of IV, was not a stipulation sufficient to satisfy N.C. Gen. Stat. § 15A-1340.14. Instead, defendant argues defense counsel was merely repeating an assertion made by the State. As the State failed to present any further evidence of defendant's prior record level, defendant argues, it did not meet its burden of proof. See id.

After reviewing the record, we hold defendant's comments at trial sufficient to show defendant stipulated to possessing a prior record level of IV. When the trial judge inquired as to the correct sentencing level for defendant, the State informed the judge that defendant was a level IV, and not a level III as the judge suggested. Defense counsel responded to the aforementioned comments by simply stating "IV." We note that defense counsel did not voice any objection to the State's assertion, nor did defense counsel seek clarification as to how the record level was determined. Defense counsel simply stated "IV" when asked what prior record level applied to defendant. Thus, we hold that defendant stipulated to his prior record level pursuant to N.C. Gen. Stat. § 15A-1340.14(f)(1).

V.

[6] Fifth, defendant argues the trial court erred by finding defendant should be sentenced at a prior record level of IV for his conviction for selling cocaine. Specifically, defendant contends the trial court erred in adding an additional sentencing point on the grounds that one of defendant's prior offenses included all of the elements of his present conviction for selling cocaine. We agree.

N.C. Gen. Stat. § 15A-1340.14(a) provides that generally "[t]he prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions that the court, or . . . the jury, finds to have been proved in accordance with this section." Section 15A-1340.14 further provides that an additional point should be added "[i]f all the ele-

ments of the present offense are included in any prior offense for which the offender was convicted, whether or not the prior offense or offenses were used in determining prior record level[.]" N.C. Gen. Stat. § 15A-1340.14(b)(6). Although a stipulation by the defendant may be sufficient to prove defendant's prior record level, the trial court's assignment of a prior record level is a conclusion of law, which we review *de novo. State v. Fraley*, 182 N.C. App. 683, 690, 643 S.E.2d 39, 44 (2007).

In the case *sub judice*, the trial judge determined defendant to be a level IV for sentencing purposes. The judge then sentenced defendant accordingly, issuing two sentences for defendant's current offenses: (1) defendant was sentenced for a minimum term of 20 months and a maximum term of 24 months for selling cocaine and for resisting a public officer and (2) defendant was sentenced for a minimum term of 11 months and a maximum term of 14 months for delivering cocaine and for possession with intent to sell or deliver cocaine.

On appeal, defendant argues the trial judge incorrectly attributed an additional sentencing point to defendant's sentence for selling cocaine, as provided in N.C. Gen. Stat. § 15A-1340.14(b)(6), because none of defendant's previous offenses contained all of the elements of the current offense of selling cocaine. Although we have found that defendant stipulated to possessing a prior record level of IV, we will review defendant's record level to determine if it was unauthorized at the time it was imposed. *See* N.C. Gen. Stat. § 15A-1446(d)(18) (2005).

Upon review, we note the record contains inconsistencies regarding the number of sentencing points attributable to defendant and how these points were calculated. However, according to the sole sentencing worksheet, defendant was assigned eight sentencing points from his previous convictions with an additional point added pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(6). We note that the addition of this final point elevated defendant from the lower prior record level of III to the higher prior record level of IV. Given that this worksheet appears to have been used to determine the prior record level for both sentences, we must now determine if the worksheet accurately reflects the defendant's prior record level for each sentence.

N.C. Gen. Stat. § 15A-1340.15 (2005) provides:

If an offender is convicted of more than one offense at the same time, the court may consolidate the offenses for judgment and

impose a single judgment for the consolidated offenses. **The judgment shall contain a sentence disposition specified for the class of offense and prior record level of the most serious offense**, and its minimum sentence of imprisonment shall be within the ranges specified for that class of offense and prior record level, unless applicable statutes require or authorize another minimum sentence of imprisonment.

*Id.* (emphasis added). In the instant case, defendant received two consolidated sentences, each based on the determination that defendant possessed a prior record level of IV. A review of the sentencing worksheet reveals defendant has previously been convicted of several felonies, including possession with the intent to sell or deliver cocaine. Because the offenses of delivering cocaine and possession of cocaine with intent to sell or deliver are both Class H felonies, a consolidated sentence may be issued based on the prior record level corresponding to the possession offense. Thus, the addition of a sentencing point in accordance with N.C. Gen. Stat. § 15A-1340.14(b)(6) was appropriate for defendant's conviction of delivering cocaine.

However, a further review of the sentencing worksheet reveals that defendant had never been convicted of any offense containing all of the elements of selling cocaine. As selling cocaine was the more serious of the two offenses contained in defendant's sentence for selling cocaine and resisting a public officer (a Class G Felony versus a Class 2 Misdemeanor), the sentence should have been issued in accordance with the prior record level that would accompany the conviction for selling cocaine. *See* N.C. Gen. Stat. § 15A-1340.15(b) (2005). Because the record contains no evidence that any points should have been added to defendant's prior record level as it pertained to his convictions for selling cocaine and resisting a public officer, we hold the trial court erred by including the additional sentencing point. *See State v. Prush*, 185 N.C. 472, 478, 648 S.E.2d 556, 561 (2007). We therefore remand this case for re-sentencing on defendant's conviction for selling cocaine.

## VI.

**[7]** Lastly, defendant argues the trial court erred by denying defendant's motion to dismiss the charges of possession with intent to sell or deliver cocaine, sale of cocaine, and delivery of cocaine because the State failed to produce sufficient evidence of each offense. We disagree.

STATE v. MACK

[188 N.C. App. 365 (2008)]

"In ruling on a motion to dismiss, the issue before the trial court is whether substantial evidence of each element of the offense charged has been presented, and that defendant was the perpetrator of the offense." *State v. Carr*, 122 N.C. App. 369, 371-72, 470 S.E.2d 70, 72 (1996) (*Carr I*). "Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *State v. Carr*, 145 N.C. App. 335, 341, 549 S.E.2d 897, 901 (2001) (*Carr II*). "All the evidence, whether direct or circumstantial, must be considered by the trial court in the light most favorable to the State, with all reasonable inferences to be drawn from the evidence, being drawn in favor of the State." *Carr I*, 122 N.C. App. at 372, 470 S.E.2d at 72.

In the instant case, defendant was convicted of: (i) possession with intent to sell or deliver cocaine, (ii) delivery of cocaine, and (iii) selling cocaine. "The offense of possession with intent to sell or deliver has the following three elements: (1) possession of a substance; (2) the substance must be a controlled substance; (3) there must be intent to sell or distribute the controlled substance." *Carr II*, 145 N.C. App. at 341, 549 S.E.2d at 901; *see* N.C. Gen. Stat. § 90-95(a)(1) (2005). Similarly, "[t]o prove sale and/or delivery of a controlled substance, the State must show a transfer of a controlled substance by either sale or delivery, or both." *Carr II*, 145 N.C. App. at 341, 549 S.E.2d at 901; *see* N.C. Gen. Stat. § 90-95(a)(1). To prove the defendant possessed a controlled substance, the State may prove such possession was either actual or constructive. *State v. Hamilton*, 145 N.C. App. 152, 155, 549 S.E.2d 233, 235 (2001).

Defendant now argues that the State did not present sufficient evidence of each element of defendant's guilt with regard to the aforementioned charges. However, upon review of the record, we find that the jury was presented with sufficient evidence of each of the alleged offenses to support a conviction. The State presented evidence that, *inter alia*, (1) Officer Kiser observed an individual wearing blue jeans, a gray sweatshirt, and a black jacket remove a baggie containing a white substance from his jacket pocket; (2) this individual approached witness Willie Phillips' car, entered the car, and sold crack cocaine to Mr. Phillips; and (3) defendant was arrested thereafter wearing a gray sweatshirt with red writing and sitting on a black jacket. From this evidence, a reasonable jury might conclude that defendant possessed contraband, intended to sell this contraband, and then sold and delivered the contraband to Mr. Phillips. Despite defendant's contentions, the fact that the trial court dismissed the

additional charge of possession of cocaine, without any additional support, does not demonstrate that the evidence was insufficient with regard to the other charges. Therefore, we hold the trial court did not err in denying defendant's motion to dismiss the drug charges for insufficiency of the evidence.

In addition to defendant's contentions that have been previously addressed, defendant asserts he was denied his right to effective assistance of counsel. We have reviewed these claims and find them to be without merit.

No error in part, reversed and remanded in part.

Judges CALABRIA and STEPHENS concur.