DIETZ, Judge.
While patrolling the area around a night club, law enforcement officers saw Defendant William Le Duc Vo and other occupants of a car leaning over in a manner that suggested they were snorting drugs. The officers approached and questioned the car's occupants. The driver admitted that they were snorting illegal drugs, and an officer seized a rolled-up, "straw-like" five dollar bill from another passenger. The officer then asked Vo to step out of the car for questioning. As the officer spoke to Vo, Vo reached into his pants pockets. The officer immediately instructed Vo not to put his hands in his pockets. Despite that warning, Vo continued to reach into his pockets several more times as the officer questioned him. At that point, the officer searched his pants pockets, but did not pat down or search any other parts of Vo's body. The officer found cocaine in a rear pocket of Vo's pants.
Vo moved to suppress the cocaine as the fruit of an unreasonable search. The trial court denied the motion, finding that the search was a permissible protective search because Vo repeatedly reached into his pockets during questioning by the officer. As explained below, we affirm. Although a protective pat down or frisk ordinarily is limited to a suspect's outer clothing, the facts in this case justified the more narrow, protective search of Vo's pockets in lieu of a full pat down or frisk.
Facts and Procedural History
On 4 April 2014, at about 12:25 a.m., Agent Michael Bradshaw and Special Agent Britt Carroll of North Carolina Alcohol Law Enforcement were patrolling near a parking garage in downtown Hickory when Agent Bradshaw saw Defendant William Le Duc Vo enter the front passenger side of a car parked in the garage. Bradshaw watched Vo lean forward and sit back up. He then saw the driver do the same before handing a flat object to someone in the back seat. Believing the occupants of the car may be snorting illegal drugs, the agents approached the car and spoke to the occupants. The driver admitted that they had snorted illegal drugs, and the backseat passenger had a rolled-up, "straw like" five dollar bill that could be used for snorting drugs.
Agent Bradshaw then asked Vo to step out of the car. Once outside, Vo reached into his pants pockets. The officer instructed him not to put his hands in his pockets. Despite this warning, Vo continued reaching into his pockets as he spoke to the officer. Agent Bradshaw then instructed Vo to turn around and place his hands on the hood of the vehicle. Agent Bradshaw searched Vo's pants pockets and found a baggie of cocaine in a back pocket.
The State charged Vo with felony possession of cocaine. Before trial, Vo moved to suppress the cocaine seized during the search of his pockets. The trial court denied the motion and made oral findings of fact and conclusions of law. Vo pleaded guilty, reserving his right to appeal the denial of his motion to suppress. He then timely appealed.
Analysis
Vo argues that the trial court erred by denying his motion to suppress because the officer's search of the inside of his pants pockets was unreasonable under the Fourth Amendment. As explained below, we disagree.
This Court reviews a lower court's ruling on a motion to suppress to determine "whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. McKinney , 368 N.C. 161, 163, 775 S.E.2d 821, 824 (2015).
"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, he may conduct a limited protective search for concealed weapons." Adams v. Williams , 407 U.S. 143, 146 (1972). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence...." Id . "So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." Id .
Ordinarily, this protective search is limited to a "pat down" or "frisk" of the outer clothing of the suspect. See State v. Shearin , 170 N.C. App. 222, 226, 612 S.E.2d 371, 375-76 (2005). But a different type of limited protective search, including reaching beneath a suspect's clothing or into pockets, may be reasonable based on the particular facts of the case.
In Adams , for example, the U.S. Supreme Court held that a protective search of a defendant's waistband during a drug stop was reasonable under the Fourth Amendment because an informant told the officers that the defendant carried a gun in that location around his waist. The Court explained that "[u]nder these circumstances the policeman's action in reaching to the spot where the gun was thought to be hidden constituted a limited intrusion designed to insure his safety, and we conclude that it was reasonable." Adams , 407 U.S. at 148.
Many courts have recognized that, when a suspect reaches into his pockets after being specifically instructed not to do so by a law enforcement officer, the officer may search the suspect's pockets under the reasoning in Adams . See , e.g. , United States v. Thompson , 597 F.2d 187, 191 (9th Cir. 1979) ; People v. Superior Court (Holmes) , 15 Cal. App. 3d 806, 812-13, 94 Cal. Rptr. 728, 732 (1971). This type of protective search is reasonable under the circumstances because, as our Supreme Court has observed, a pants pocket easily could conceal "a knife, razor, or similar small but dangerous weapon." State v. Peck , 305 N.C. 734, 739, 291 S.E.2d 637, 640 (1982). When a suspect ignores a specific instruction to keep his hands visible, and instead reaches into his pockets despite an officer's warning not to do so, it strongly suggests that the suspect may possess some sort of concealed weapon. This concern justifies a limited intrusion into the suspect's pockets to confirm that no weapons are present.
Indeed, some courts have suggested that this type of limited search is preferable to the "petty indignity" of a frisk or pat down that could involve touching the suspect's "arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet." Terry v. Ohio , 392 U.S. 1, 17 & n.13 (1968). For example, in United States v. Reyes , the Fifth Circuit held that an officer's request that a drug suspect lift his shirt and empty his pockets to ensure the suspect had no weapons was reasonable because "[n]on-consensual touching of another in most cases is clearly more intrusive of an individual's personal security than is a request to raise a shirt or to empty pockets." 349 F.3d 219, 225 (5th Cir. 2003).
Here, the trial court found that, although Vo initially was "cooperative and polite," the officer "kept asking him to keep his hands out of his pockets but the defendant continued to put his hands in his pockets." As a result, the officer searched Vo's pants pockets "for security-or for safety purposes" but did not pat down or search any other portion of Vo's body.
We agree with the trial court that the officer's limited protective search of Vo's pants pockets was reasonable under Adams. Vo's repeated attempts to reach into his pockets despite the officer's warnings not to do so created the sort of special circumstances that justified a limited protective search different from the typical pat down or frisk. Accordingly, we reject Vo's argument and affirm the trial court's judgment.[1]
Conclusion
For the reasons stated above, we affirm the trial court's denial of the motion to suppress.
AFFIRMED.
Report per Rule 30(e).
Judges ELMORE and STEPHENS concur.

We also note that, although the State did not assert the inevitable discovery doctrine, the record in this case plainly demonstrates the doctrine would apply. By the time the officer spoke to Vo, he already had probable cause to arrest Vo because Vo and the other occupants of the vehicle appeared to be "snorting something" as the officer approached; the officer recovered a tightly rolled-up, "straw like" five-dollar bill from the rear-seat passenger; and the driver admitted that they were snorting illegal drugs. See, e.g., State v. Milien, 144 N.C. App. 335, 341, 548 S.E.2d 768, 772 (2001). Thus, the cocaine in Vo's pockets ultimately would have been recovered in a search incident to his arrest. See United States v. Rodriquez, 750 F. Supp. 1272, 1277 (W.D.N.C. 1990) ("Here, had Officer Hazelton not first seized cocaine from Defendant's pocket, he nevertheless would have ultimately arrested and searched her. To exclude the cocaine seized from her pocket ignores this reality."), aff'd sub nom. United States v. Rodriquez-Morales, 972 F.2d 343 (4th Cir. 1992) ; State v. Jones, 221 N.C. App. 236, 240, 725 S.E.2d 910, 914 (2012) (noting that a search of defendant's pockets was a lawful search incident to arrest).